NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MICHAEL G. FREEDMAN (Cal. Bar No. 281279)
Assistant United States Attorney
INMLR Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0631
    Facsimile: (213) 894-0141
    E-mail:    michael.freedman@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| IN RE CELLULAR TELEPHONE | No. 2:19-MJ-04941 |
|---|---|
| | GOVERNMENT'S *EX PARTE* APPLICATION FOR A WARRANT AUTHORIZING (1) THE DISCLOSURE OF GPS AND CELL-SITE INFORMATION AND (2) USE OF CELL-SITE SIMULATOR; REQUEST TO SEAL; AFFIDAVIT OF |
| | **(UNDER SEAL)** |

I.   INTRODUCTION

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby applies for a warrant requiring cellular telephone service provider(s) to furnish the Drug Enforcement Administration (the "Investigating Agency") with information relating to the following cellular telephones:

    a.   (760) 992-1237, a cellular telephone issued by T-Mobile or its affiliates with an IMSI of 310260079097400 and an IMEI of 358853102431030 subscribed to "Kevin Wilton" at "14431 Cortez

Drive, Victorville, CA 92392" and believed to be used by Unidentified Male ("UM 65") (the **"Subject Telephone")**.

Authorization is sought to obtain prospective cell-site information, as well as the physical location of the **Subject Telephone**, to include E-911 Phase II data and latitude and longitude data gathered for the **Subject Telephone**, including Global Positioning Satellite and/or network timing information, including Sprint's Per Call Measurement Data, Verizon's Real Time Tool, AT&T's Network Event Location System and T-Mobile's True Call data, and including information from such programs as Nextel Mobile Locator, Boost Mobile Loopt, Sprint/Nextel Findum Wireless, which will establish the approximate location of the **Subject Telephone**, and which information is acquired in the first instance by the Carrier ("GPS information"), at such intervals and times as the government may request, and the furnishing of all information, facilities, and technical assistance necessary to accomplish said disclosure unobtrusively, for a period of 45 days.

Additionally, this application seeks authorization for the Investigating Agency to use a cell-site simulator, commonly referred to as a "Stingray," in order to obtain dialing, routing, addressing, or signaling information (but not content) from the **Subject Telephone**, whether in use or not.

The application is made in connection with an investigation of offenses committed by Troy WILLIAMS, aka Desmond RORERIC, aka Hector Forbes aka Haneen ARRIE ("WILLIAMS"), Agustin Rafael BELTRAN ("BELTRAN"), Agustin VALENZUELA JR. ("VALENZUELA JR."), and Jose Luis TEJEDA ("TEJEDA"), and others known and unknown (the "Target Subjects"), specifically, violations of 21 U.S.C. §§ 846, 841(a)(1)

(conspiracy to distribute and distribution of controlled substances); and 21 U.S.C. § 843(b) (use of a communication facility to facilitate a narcotics trafficking offense) (the "Target Offenses"), and is based upon the attached agent affidavit.  There is probable cause to believe that federal crimes are being committed and that the information likely to be received concerning the approximate location of the **Subject Telephone**, currently within, or being monitored or investigated within, the Central District of California, will constitute or yield evidence of those crimes.

II.  <u>CELL SITE AND GPS INFORMATION FROM THE CARRIERS</u>

The information sought by this application includes information about the location (physical address) of the "cell-sites" linked to the **Subject Telephone** at call origination (for outbound calling), call termination (for incoming calls), and, if reasonably available, during the progress of a call.  This information, which is acquired in the first instance by the Carrier, includes any information, apart from the content of any communication, that is reasonably available to the Carrier and that is requested by the Investigating Agency, concerning the cell-sites/sectors receiving and transmitting signals to and from the **Subject Telephone** whether or not a call is in progress.  This prospective information is sought based on 18 U.S.C. § 2701 <u>et seq.</u> (the "Stored Communications Act").  The Stored Communications Act provides:

> A governmental entity may require a provider of electronic
> communication service...to disclose a record or other
> information pertaining to a subscriber to or customer of

such service (not including the contents of communications) only[1] when the governmental entity --

    (A)    obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction[.]

18 U.S.C. § 2703(c)(1); see also Carpenter v. United States, ___ S. Ct. ___, 2018 WL 3073916 (June 22, 2018) (holding that a warrant is required to obtain seven or more days' worth of historical cell-site information).[2]

Prospective cell-site information is also sought based on the authority of 18 U.S.C. § 3121 et seq. (the "Pen Register Statute").[3]

---

[1] This section also provides other methods to compel disclosure, including via subpoena or court order.  However, the government in this case is proceeding under the highest threshold, that is, obtaining a warrant as described in § 2703(c)(1)(A).

[2] The definition of terms in the Stored Communications Act makes clear that the "record or other information" that a court may order a provider to disclose to the government under Section 2703(c)(1)(A) includes both cell site and other location information.  First, the Stored Communications Act expressly adopts the definition of statutory terms set forth in 18 U.S.C. § 2510.  See 18 U.S.C. § 2711 ("As used in this chapter. . . (1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section").  Thus, the term "provider of electronic communication service" used in Section 2703(c) covers cellular telephone service providers, because 18 U.S.C. § 2510(15) defines "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  Further, cell site and other location information is "a record or other information pertaining to a subscriber to or customer of" an electronic communications service – another term used in Section 2703(c) – because cellular telephone service providers receive and store the information, if sometimes only momentarily, before forwarding it to law enforcement officials. See In Re: Application of the United States for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone, 460 F. Supp. 2d 448, 457-60 (S.D.N.Y. 2006).  Finally, this Court is a "court of competent jurisdiction" because it is a "district court of the United States (including a magistrate judge of such a court)... that...has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

[3] 18 U.S.C. § 3127(3) defines "pen register" as "a device or process which records or decodes dialing, routing, addressing, or

The government therefore also complies with the provisions of that statute, including by providing the required certification by the attorney for the government at the end of this application.  Pursuant to the Pen Register Statute, upon an application made under 18 U.S.C. § 3122(a)(1) a court "shall enter an <u>ex parte</u> order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation."  18 U.S.C. § 3123(a)(1).[4]

Cellular telephone companies routinely create and maintain, in the regular course of their business, records of information concerning their customers' usage.  These records typically include for each communication a customer makes or receives (1) the date and time of the communication; (2) the telephone numbers involved; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.  The records may also, but do not always, specify a particular sector of a cell tower used to transmit a communication.

signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication."  A "trap and trace" device is similarly defined for any device or process which captures incoming data.  <u>See</u> 18 U.S.C. § 3127(4).

[4] While 47 U.S.C. § 1002, which is part of the Communications Assistance for Law Enforcement Act of 1994 ("CALEA"), would preclude seeking physical location information based on the Pen Register Statute alone, the Stored Communications Act provides the requisite additional authority for this Court to authorize the production by the Carrier of cell-site information to the government.

Cell-site information is useful to law enforcement because of the limited information it provides about the general location of a cell phone when a communication is made.

This application also seeks GPS information for the **Subject Telephone**, which is sought based on 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41. As discussed above, data that provides information about the location of a customer's phone falls within 18 U.S.C. § 2703(c)'s definition of "a record or other information pertaining to a subscriber to or customer of [an electronic communication service]." Thus, the United States may obtain a warrant requiring a cell phone company to disclose GPS information "using the procedures described in the Federal Rules of Criminal Procedure," that is, Federal Rule of Criminal Procedure 41, as is contemplated by this application and order.

Some, but not all, cellular telephone service providers have the technical means to obtain GPS information. GPS information is not generated specifically for law enforcement, but is the product of United States Federal Communications Commission requirements that cellular telephone service providers maintain and access location information for emergency responders. To obtain GPS information, a "ping" (electronic signal) is sent to the cellular telephone, which unobtrusively activates the GPS chip in the telephone. This information is not provided in a streaming fashion regardless of the cellular telephone activity, but instead is sent only in response to specific law-enforcement agency requests. Location data through GPS information can be delivered as accurately as within three meters; however, if the cellular telephone is in motion, such as while in a moving vehicle, the error range in meters may be greater, or the

cellular telephone service provider may simply provide cell-site information.  In addition, the cellular telephone must be powered on and, usually, not in the middle of a telephone call, for GPS information to be obtained.  Moreover, if the cellular telephone is inside a building, or is in some other way blocked from the satellite, GPS information may not be obtainable.  In such cases, the service provider will often provide law enforcement with cell-site information instead.

### III. CELL-SITE SIMULATOR

This application also seeks a warrant authorizing the Investigating Agency to use a cell-site simulator, commonly referred to as a "Stingray," to obtain dialing, routing, addressing, or signaling information from the **Subject Telephone,** whether in use or not.  This device simulates a cell site, and by combination of surveillance and action as a mobile cell site, allows the Investigating Agency to locate the **Subject Telephone** more conclusively.  This Court has authority to issue the requested warrant under Fed. R. Crim. P. 41(b)(1) and (b)(2) because, as explained in the agent affidavit, the **Subject Telephone** are currently believed to be located within this District.[5]  Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and proposed warrant are designed to comply with the requirements of the Pen Register Statute as well as Rule 41.  See 18 U.S.C. §§ 3121-3127.  The warrant

---

[5] Pursuant to Rule 41(b)(2), law enforcement may use the cell-site simulator outside this District provided the **Subject Telephone** is within the District when the warrant is issued.

therefore includes all the information required to be included in a pen register order.  See 18 U.S.C. § 3123(b)(1).

IV.  OTHER REQUESTED ORDERS

Additionally, this application also seeks authorization under 18 U.S.C. § 3103a(b), for reasonable cause shown, to delay any notification the government is required to give regarding the requested warrant to the subscriber(s) and user(s) of the **Subject Telephone** for a period of 30 days from the date that the disclosure ends.  18 U.S.C. § 3103a(b) states that any notice required following the issuance of a warrant may be delayed if, inter alia, the court finds reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result.  An adverse result is defined in 18 U.S.C. § 2705(a)(2) to include endangering the life or physical safety of a person, flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or otherwise seriously jeopardizing an investigation or unduly delaying a trial.  Moreover, the Advisory Committee Notes for Fed. R. Crim. P. 41(f)(3) (2006 Amendments) state that delay of notice may be appropriate where "the officer establishes that the investigation is ongoing and that disclosure of the warrant will compromise that investigation."  The attached agent affidavit provides reasonable cause to believe that immediate notification of the execution of the warrant may have an adverse result.  The proposed warrant both provides for the giving of such notice within 30 days after the date that the disclosure ends and prohibits, as part of the receipt of the requested information, the seizure of any tangible property or any other prohibited wire or electronic information as stated in 18 U.S.C. § 3103a(b)(2).  As

discussed in the attached agent affidavit, immediate notification of this warrant to the user(s) of the **Subject Telephone** may have an adverse result.

Similarly, pursuant to 18 U.S.C. § 2705(b) and 18 U.S.C. § 3123(d)(2), this application requests that the Court enter an order commanding the Carrier not to notify any person, including the subscriber(s) of the **Subject Telephone**, of the existence of the warrant until further order of the Court, until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required, or until one year from the date the Carrier complies with the warrant or such later date as may be set by the Court upon application for an extension by the United States, for the reasons outlined in the attached agent affidavit.

This application also seeks an order that: (1) authorizes the disclosure of the requested information whether the **Subject Telephone** is located within this District, outside of the District, or both, pursuant to 18 U.S.C. § 2703(c)(1)(A) and Rule 41(b), and, for good cause shown, at any time of the day or night pursuant to Rule of Criminal Procedure 41; (2) authorizes the disclosure of not only information with respect to the **Subject Telephone**, but also with respect to any changed telephone number(s) assigned to an instrument bearing the same ESN, IMSI, or IMEI (hereinafter "unique identifying number") as the **Subject Telephone**, or any changed unique identifying number subsequently assigned to the same telephone number as the **Subject Telephone**, or any additional changed telephone number(s) and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same wireless telephone account number as the **Subject Telephone** within the period

of disclosure authorized by the warrant; and (3) orders the Investigating Agency to reimburse the applicable cellular telephone service provider for its reasonable expenses directly incurred in providing the requested information and any related technical assistance.

Finally, this application requests that it, the proposed warrant that has been concurrently lodged, and the return to the warrant be sealed by the Court until such time as the Court directs otherwise. Allowing disclosure to the public at large would likely jeopardize the ongoing investigation for the reasons outlined in the attached agent affidavit.

Dated: November 20, 2019          Respectfully submitted,

                                  NICOLA T. HANNA
                                  United States Attorney

                                  BRANDON D. FOX
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                   /s/ Michael G. Freedman
                                  MICHAEL G. FREEDMAN
                                  Assistant United States Attorney

                                  Attorneys for Applicant
                                  UNITED STATES OF AMERICA

<u>CERTIFICATION</u>

In support of this application, and pursuant to 18 U.S.C. § 3122, I state that I, Michael G. Freedman, am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.  I certify that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by the Investigating Agency of the Target Subjects for violations of the Target Offenses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraph is true and correct.


November 20, 2019                          */s/ Michael G. Freedman*
_____          _____
DATE                                       MICHAEL G. FREEDMAN
                                           Assistant United States Attorney
                                           INMLR Section

AFFIDAVIT OF ETHAN SUNTRUP

I, Ethan Suntrup being duly sworn, declare as follows:

I.    INTRODUCTION

1.    I am a United States Drug Enforcement Administration (DEA) Special Agent (SA) and an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code.  I am empowered to conduct investigations of and to make arrests for federal felony offenses, including those enumerated in 18 U.S.C. § 2516.

2.    I have been employed as a Special Agent with the Drug Enforcement Administration since January 2018, currently assigned to the Los Angeles Field Division (LAFD), Enforcement Group 2.  In the course of my employment with the DEA, I have received approximately 20 weeks of specialized training at the DEA Academy in Quantico, Virginia involving use, possession, packaging, manufacturing, sales, concealment, and transportation of various controlled substances, money laundering techniques, and conspiracy investigations.  I have also participated in narcotics investigations.  I have debriefed defendants and witnesses who had personal knowledge of narcotics trafficking organizations.  Additionally, I have participated in many aspects of narcotics investigations including conducting physical surveillance, writing and executing search warrants, directing confidential informants, and conducting arrests. Additionally, I have attended specialized training in electronic communications exploitation and clandestine narcotics laboratories.  Based on my training and experience, I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and

transportation of narcotics and the collection of money proceeds of narcotics trafficking.  I am also familiar with methods employed by large narcotics organizations to thwart detection by law enforcement, including the use of debit calling cards, public telephones, cellular telephone technology, counter surveillance, false or fictitious identities, and encoded communications.  During my employment with the DEA, I have participated in narcotics investigations for violations of 21 U.S.C. § 841(a)(1) as both a case agent and in a supportive role.  I have assisted in the arrests of multiple drug traffickers.  I have participated in several static and mobile surveillance activities across Southern California and have assisted in the execution of multiple search warrants.  In addition, I have conducted investigations regarding the unlawful importation, possession and distribution of controlled substances.

3.    Based on my training and experience as a DEA SA, I have become familiar with the criminal activities of individuals involved in drug trafficking organizations, including drug manufacturing, drug distribution, and money laundering.  I have also become familiar with the methods used by such individuals to avoid detection by law enforcement, including the use of: multiple cellular telephones, including those subscribed to in the names of other persons; prepaid cellular telephones; counter-surveillance techniques; coded and ambiguous language; multiple vehicles; vehicles equipped with concealed compartments; and false identities.  In addition, through my investigations, my training and experience, and my discussions with other law enforcement personnel, I have become familiar with the tactics and methods used by narcotics traffickers to smuggle and safeguard controlled substances, to distribute controlled substances,

1  to collect and launder the proceeds from the sale of controlled

2  substances, and the clandestine manufacturing of narcotics.  These

3  tactics and methods include using cellular telephones, using cloned

4  communication devices, using counter-surveillance techniques, using

5  false or fictitious identities, and using coded communications and

6  coded words in conversations.  Based on my training and experience, I

7  have also learned that cell phones used by narcotics traffickers

8  often have a high call volume from a variety of phone numbers.

9       4.   Also, during my time assigned to the Los Angeles Field

10 Division, I have worked on cases involving conspiracies to import

11 controlled substances, conspiracies to distribute controlled

12 substances, and money laundering.  Through these investigations, I

13 have become familiar with the methods used by transnational criminal

14 organizations to import controlled substances to the United States,

15 methods used to distribute those controlled substances throughout the

16 United States, and methods of laundering proceeds from the

17 distribution of those controlled substances.

18                    II.  <u>PURPOSE OF AFFIDAVIT</u>

19      5.   This affidavit is made in support of an application for a

20 warrant authorizing the disclosure of cell-site and GPS information,

21 as well as the use of a cell-site simulator, also known as a

22 "Stingray," as defined or discussed within the application, at such

23 intervals and times as the government may request, and the furnishing

24 of all information, facilities, and technical assistance necessary to

25 accomplish said disclosure unobtrusively, which disclosure will

26 establish the approximate location of the following cellular

27 telephone for a period of 45 days:

28

6.    (760) 992-1237, a cellular telephone issued by T-Mobile or its affiliates with an IMSI of 310260079097400 and an IMEI of 358853102431030 subscribed to "Kevin Wilton" at "14431 Cortez Drive, Victorville, CA 92392" and believed to be used by Unidentified Male ("UM 65") (the **Subject Telephone").**

7.    I also seek authorization under 18 U.S.C. § 3103a(b), for reasonable cause shown below, to delay notification of the proposed warrant for a period of 30 days from the date that the disclosure ends.

8.    As described more fully below, I respectfully submit there is probable cause to believe that cell-site information, GPS information, and information from a cell-site simulator likely to be received concerning the approximate location of the **Subject Telephone**, will constitute or yield evidence of violations of 21 U.S.C. §§ 846, 841(a)(1) (conspiracy to distribute and distribution of controlled substances); and 21 U.S.C. § 843(b) (use of a communication facility to facilitate a narcotics trafficking offense) by Troy WILLIAMS, aka Desmond RORERIC, aka Hector FORBES aka Haneen ARRIE ("WILLIAMS"), Agustin Rafael BELTRAN ("BELTRAN"), Agustin VALENZUELA JR. ("VALENZUELA JR."), Jose Luis TEJEDA ("TEJEDA"), UM 65 and others known and unknown (the "Target Subjects").

9.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and

4

statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

10.  DEA agents in Los Angeles have been conducting an investigation into TEJEDA, a narcotics trafficker who distributes narcotics in the Central District of California to UM 65 and others, and also mails narcotics to other states. Pursuant to an order issued by the Honorable Dolly M. Gee, United States District Judge, in CR Misc. 19-CM-00217, 19-CM-00217 (A), and 19-CM-00217 (B), Agents were intercepting Subject Telephones #7, #24 and #30, each used by TEJEDA, and have intercepted narcotics-related communications with several identified and unidentified individuals. Particularly, agents have intercepted several narcotics related phone calls between TEJEDA, using his previously utilized Subject Telephone #7, and UM 65, using his previously utilized telephone number 909-454-0330. Pursuant to an order issued by the Honorable Dolly M. Gee, United States District Judge, in CR Misc. 19-CM-00217 (C), agents have recently began intercepting TEJEDA's new telephone, Subject Telephone #32, and have intercepted communications between TEJEDA and UM 65, who is now using the **Subject Telephone**.

## IV. STATEMENT OF PROBABLE CAUSE

11.  Based on my knowledge of and participation in the DEA investigations described below, my conversations with other agents and law enforcement officials, my review of reports and records, and my training and experience, I know the following facts:

A.   The Identification of the **Subject Telephone**, Utilized by UM 65

12.   As previously mentioned, pursuant to the order in CR Misc. 19-CM-00217, agents have intercepted several narcotics related telephone conversations between TEJEDA, using his Subject Telephone #7, and UM 65, using telephone 909-454-0330. Pursuant to the order in CR Misc. 19-CM-00217 (C), agents are now intercepting TEJEDA's new telephone, Subject Telephone #32, and on November 10, 2019, TEJEDA, using Subject Telephone #32, made a call to the **Subject Telephone** at approximately 3:02 PM. A voice comparison was conducted between UM 65 and the user of the **Subject Telephone** and it was determined that UM 65 is the user of the **Subject Telephone**.

13.   It is also worth noting that UM 65's previously utilized telephone, 909-454-0330, was subscribed to the address 14412 Cortez Drive, Victorville, CA. The **Subject Telephone** is subscribed to the address 14431 Cortez Drive, Victorville, CA. A check of open source databases for both of the aforementioned addresses yields no results, leading agents to believe that they are fictitious addresses. Based on my training experience, knowledge of this investigation, the voice comparison between UM 65 and the user of the **Subject Telephone**, and the similarities in fictitious subscriber addresses of 909-454-0330 and the **Subject Telephone**, I believe that UM 65 is now utilizing the **Subject Telephone**.

B.   Interceptions of TEJEDA and UM 65 discussing narcotics transactions

14.   Below are summaries of several calls between TEJEDA and UM 65, using his previously utilized telephone number 909-454-0330, based on transcripts and summaries of calls that I have reviewed. These calls were intercepted pursuant to CR Misc. 19-CM-00217

authorizing the wire and electronic intercepts of TEJEDA's previously utilized Subject Telephone #7. The calls are primarily in English, with some Spanish spoken, and were translated, interpreted, and summarized or transcribed by wire room monitors and DEA agents in Los Angeles. The following summaries of calls are not verbatim. All times are Pacific unless otherwise indicated.

(1)   February 9, 2019

15. UM 65 texts TEJEDA "Let's go to the office"

16. Based on my training, experience, and knowledge of this investigation, I believe the following regarding this text message: These traffickers use the code word "office" to refer to a place where narcotics transactions are conducted. When UM 65 suggests that UM 65 and TEJEDA go to the "office", he is suggesting that they meet at a predetermined location to conduct a narcotics transaction.

(2)   February 11, 2019

17. TEJEDA asks UM 65 if "Sperm" is going to need the "pretendos" and the "A". UM 65 tells TEJEDA to bring the "pretendos" and a little "A". TEJEDA tells UM 65 that he will call "him" and see if "he" could "come to their side".

18. Based on my training and experience and knowledge of this investigation, I believe the following regarding this interception: These traffickers use the code word "A" to refer to cocaine and the code word "pretendos" to refer to marijuana. TEJEDA is asking UM 65 if "Sperm", a customer, is in need of cocaine and marijuana. UM 65 replies by telling TEJEDA to bring the marijuana and a small amount of cocaine. When TEJEDA tells UM 65 that TEJEDA will call "him" and see if he can "come to their side", he is explaining to UM 65 that

7

1   TEJEDA will check with his source of supply to see if TEJEDA can

2   obtain the narcotics that UM 65 is requesting.

3        V.   <u>TECHNICAL BACKGROUND REGARDING CELL-SITE SIMULATORS</u>

4        19.   Based on my training an experience and my conversations

5   with other agents and investigators, I understand the following

6   regarding cell-site simulators:

7        a.   Cell-site simulators function by transmitting as a

8   cell tower.  In response to the signals emitted by the simulator,

9   cellular devices in the proximity of the device identify the

10  simulator as the most attractive cell tower in the area and thus

11  transmit signals to the simulator that identify the device in the

12  same way that they would with a networked tower.

13       b.   A cell-site simulator receives and uses an industry

14  standard unique identifying number (<u>e.g.</u>, Electronic Serial Number

15  (ESN), Mobile Equipment Identifier (MEID), International Mobile

16  Subscriber Identity (IMSI), International Mobile Equipment Identity

17  (IMEI), Mobile Station Identity (MSID), Mobile Directory Number (MDN)

18  or the Universal Fleet Member Identity (UFMI)) that is assigned by a

19  device manufacturer or cellular network provider.  When used to

20  locate a known cellular device, a cell-site simulator initially

21  receives the unique identifying number from multiple devices in the

22  vicinity of the simulator.  Once the cell-site simulator identifies

23  the specific cellular device for which it is looking, it will obtain

24  the signaling information relating only to that particular phone.

25       c.   By transmitting as a cell tower, cell-site simulators

26  acquire the unique identifying information from cellular devices.

27  This identifying information is limited, however.  Cell-site

28  simulators provide only the relative signal strength and general

8

direction of a subject cellular telephone; they do not function as a GPS locator, as they do not obtain or download any location information from the device or its applications.  Moreover, cell-site simulators do not collect the contents of any communication.  This includes any data contained on the phone itself:  the simulator does not remotely capture emails, texts, contact lists, images, or any other data from the phone.  In addition, cell-site simulators do not provide subscriber account information (for example, an account holder's name, address, or telephone number).

VI.   INTENDED USE OF THE CELL-SITE SIMULATOR AND
DELETION OF NON-TARGET DATA

20.  Investigators intend to use the cell-site simulator to send signals to the **Subject Telephone** that will cause the **Subject Telephone**, and non-target cellular phones on the same provider network in close physical proximity, to emit unique identifying information, which the cell-site simulator will collect. Investigators will then use the information collected by the cell-site simulator to determine the physical location of the **Subject Telephone**.  Investigators plan to use the cell-site simulator to determine unique identifiers at multiple locations and/or multiple times at the same location.

21.  Although the cell-site simulator will collect the unique identifiers not only of the **Subject Telephone**, but also identifiers belonging to nearby non-target cellular telephones, these latter identifiers will not be used by law enforcement for investigative purposes, just as the extraneous incoming and outgoing telephone numbers necessarily recorded by conventional pen registers and trap-and-trace devices are not used for affirmative investigative

purposes.  Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the **Subject Telephone** from all other devices.  Once law enforcement has located the **Subject Telephone**, it will delete all information not associated with the **Subject Telephone.**

22.   The cell-site simulator may interrupt cellular service of cellular devices within its immediate vicinity.  Any service disruption will be brief and temporary, and all operations will attempt to limit the interference with cellular devices.

## VII. <u>GROUNDS FOR SEALING AND DELAYING NOTICE</u>

23.   Based on my training and experience and my investigation of this matter, I believe that reasonable cause exists to seal this application and warrant, as well as the return to the warrant.  I also believe that reasonable cause exists to delay the service of the warrant by the Investigating Agency as normally required for a period of 30 days beyond the end of the disclosure period pursuant to 18 U.S.C. § 3103a(b) and, pursuant to 18 U.S.C. § 2705(b), to enter an order commanding the Carrier not to notify any person, including the subscriber(s) of the **Subject Telephone**, of the existence of the warrant until further order of the Court, until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required, or until one year from the date the Carrier complies with the warrant or such later date as may be set by the Court upon application for an extension by the United States.  There is reason to believe that such notification will result in: (1) flight from prosecution; (2) destruction of or tampering with

evidence; (3) intimidation of potential witnesses; or (4) otherwise seriously jeopardizing the investigation.

24.  Furthermore, there is good cause for the warrant to be issued such that the information may be provided to law enforcement at any time of the day or night because in my training and experience, and knowledge of this investigation, the subjects of the investigation do not confine their activities to daylight hours, and it is often even more difficult to conduct surveillance at night.

VIII.    <u>CONCLUSION</u>

25.  For all of the above reasons, there is probable cause to believe that prospective cell-site information, GPS information, as well as information from a cell-site simulator, likely to be received concerning the approximate location of the **Subject Telephone**, currently within, or being monitored or investigated within, the Central District of California, will constitute or yield evidence of violations of the Target Offenses being committed by the Target Subjects.

_____
Ethan Suntrup
Special Agent, DRUG
ENFORCEMENT ADMINISTRATION

Subscribed to and sworn before me
this 20th day of November, 2019.

_____
HONORABLE FREDERICK F. MUMM
UNITED STATES MAGISTRATE JUDGE